# IN THE COURT OF APPEALS OF IOWA

No. 20-1071
Filed October 7, 2020

**IN THE INTEREST OF B.S. and B.R.,**
**Minor Children,**

**P.S., Father,**
        Appellant.
_____

Appeal from the Iowa District Court for Pottawattamie County, Eric J. Nelson, District Associate Judge.

A father appeals the termination of his parental rights.  **AFFIRMED.**

Amanda Heims, Council Bluffs, for appellant father.

Thomas J. Miller, Attorney General, and Mary A. Triick, Assistant Attorney General, for appellee State.

Sara Benson, Councils Bluffs, attorney and guardian ad litem for minor children.

Considered by Bower, C.J., and May and Ahlers, JJ.

**BOWER, Chief Judge.**

A father appeals the termination of his parental rights. We find clear and convincing evidence supports the grounds for termination, termination is in the children's best interests, and the State engaged in reasonable efforts to reunify the family. We affirm the decision of the juvenile court.

### I. Background Facts & Proceedings

P.S. is the father of B.S. and B.R., who were born in 2019 and 2020. Each child tested positive for methamphetamine at birth and was removed from the parents' custody within two weeks.[1] They were placed with a family member under the supervision of the department of human services (DHS).

The father has a thirty-year history of drug abuse, including many years of intravenous methamphetamine use. During a May 2019 substance-abuse evaluation, he shared he did not see a need for alcohol or drug treatment. The evaluator diagnosed him with a severe amphetamine-type substance use disorder. Other drug use disorders were diagnosed as mild or moderate and in remission. The evaluator recommended intensive outpatient treatment, with the observation such a program "is offered at many facilities in [the area] with little or no wait list." Despite a juvenile court order to complete the recommendations of his evaluation, the father did not participate in any outpatient program, citing his work schedule. Instead, he attended Alcoholics' Anonymous meetings twice a week. He failed to show for multiple scheduled drug tests and tested positive for methamphetamine

---

[1] The mother consented to termination of her parental rights.

multiple times between April 2019 and May 2020. He also failed to complete a mental-health evaluation as ordered by the juvenile court.

The father displayed additional concerning behaviors throughout the juvenile court proceedings. When the older child was born in early 2019, the father attempted to leave the hospital with the child before discharge; security officers had to forcibly remove the child from him. In the process, the father assaulted one of the officers and was arrested. In September 2019, the older child was on a trial period in the parents' custody when the father was arrested for domestic-abuse assault against the mother—she was pregnant with the younger child at the time. He was again arrested in April 2020, and the charges included possession of methamphetamine.

On June 18, 2020, the termination hearing was held using videoconference software, and the father joined via telephone.

On August 7, the juvenile court terminated the father's parental rights pursuant to Iowa Code section 232.116(1)(e), (h), and (*l*) (2020) as to the older child, and section 232.116(1)(*l*) as to the younger child. The father appeals.

**II. Standard of Review**

Our review of termination-of-parental-rights proceedings is de novo. *In re A.B.*, 815 N.W.2d 764, 773 (Iowa 2012). Clear and convincing evidence is needed to establish the grounds for termination. *In re J.E.*, 723 N.W.2d 793, 798 (Iowa 2006). Clear and convincing evidence means there is "no serious or substantial doubt about the correctness of the conclusion drawn" from the evidence. *In re D.D.*, 653 N.W.2d 359, 361 (Iowa 2002) (citation omitted). The paramount concern

in termination proceedings is the best interests of the child.  *J.E.*, 723 N.W.2d at 798.

**III. Analysis**

The father claims the juvenile court erred in finding clear and convincing evidence supported the grounds for termination.  He noted it was difficult to engage in services due to the COVID-19 outbreak and resulting office closures of drug-testing and treatment facilities and the suspension of visitation.  He also claims termination would be detrimental to the children due to the closeness of the parent-child relationship.

**A. Grounds for termination.**  "When the juvenile court terminates parental rights on more than one statutory ground, we may affirm the juvenile court's order on any ground we find supported by the record."  *A.B.*, 815 N.W.2d at 774.  Because the father's parental rights to the younger child were only terminated pursuant to Iowa Code section 232.116(1)(*l*), we will only address that ground.

The juvenile court may order the termination of parental rights under paragraph (*l*) when it finds all of the following have occurred:

> (1) The child[ren] ha[ve] been adjudicated [children] in need of assistance pursuant to section 232.96 and custody has been transferred from the child[ren]'s parents for placement pursuant to section 232.102.
> (2) The parent has a severe substance-related disorder and presents a danger to self or others as evidenced by prior acts.
> (3) There is clear and convincing evidence that the parent's prognosis indicates that the child[ren] will not be able to be returned to the custody of the parent within a reasonable period of time considering the child[ren]'s age and need for a permanent home.

Iowa Code § 232.116(1)(*l*).

The father claims the State failed to establish he has a severe, chronic substance-abuse problem or that the children cannot be returned to his custody within a reasonable period of time.[2]

The May 2019 substance-abuse evaluation submitted to the court included a diagnosis of a severe substance-abuse disorder. Although the father claims to have participated in a second evaluation, he did not submit it to DHS or the court. He did not participate in court-ordered substance-abuse treatment. He tested positive for methamphetamine multiple times throughout the CINA and termination proceedings, including his last test a month before the termination hearing.

The father has shown multiple instances of reckless and dangerous behaviors endangering himself and others. He attempted to abscond with his newborn child from the hospital and was in an altercation with hospital security, which resulted in his arrest. He assaulted the mother of the children while she was pregnant. He engaged in reckless driving and drug possession that resulted in another arrest. Clear and convincing evidence shows the father has a severe substance-related related disorder and presents a danger to himself and others around him.

As to the third element—that the children cannot return to his custody within a reasonable period of time—we adopt the juvenile court's findings:

> As was made clear by [P.S.]'s statements in his evaluation and by his conduct throughout both of these cases, he does not intend to complete substance abuse treatment to address his substance abuse addiction. He never provided proof that he completed an alleged updated evaluation in January 2020, and he has only gone

---

[2] The older child was adjudicated as a child in need of assistance (CINA) on April 18, 2019, and the younger child was adjudicated as a CINA on February 7, 2020.

so far as to have an evaluation scheduled at the time of the termination hearing. It is also clear that he does not intend to submit to testing on a regular basis so that the department and this court could track any progress he might make. He consistently fails to show for tests, even when the testing was set up to be conducted in his home. When he did submit to a test in May 2020, it was positive for amphetamine and methamphetamine. There is no way to conclude that his prognosis is on an upward trajectory. Instead, this court anticipates that [P.S.] will continue to struggle with his severe substance-related disorder, rendering him unable to parent both [the children] in the foreseeable future.

We conclude clear and convincing evidence supports the termination of the father's rights under section 232.116(1)(*l*).

**B. Parent-child bond.** The father claims the close parent-child bond he has with the children means termination would be detrimental to the children. *See id.* § 232.116(3) (establishing permissive exceptions to termination); *In re D.W.*, 791 N.W.2d 703, 709 (Iowa 2010).

The children here are very young—one year old and a few months old. The father only sporadically attended visitation, which was still fully supervised at the time of the termination hearing. The children rely on their current caregivers for all of their needs. The children's social worker testified the father has no bond with the children.

We do not find clear and convincing evidence of such a close parent-child bond between the father and either child that would preclude termination of his parental rights.

**C. Reasonable efforts.** The father raises a question of whether the State made reasonable efforts to reunify him with the children, particularly the younger child, who was born in early 2020. In particular, he alleges services were unavailable to him due to closures during the COVID-19 pandemic.

> DHS's obligation to provide reasonable efforts until a final written termination order does not necessarily require DHS to provide reasonable efforts toward reunification. The legislature instructed that "the paramount concern[s] in making reasonable efforts" are "[a] child's health and safety." Where it is inappropriate to return a child to the family home, the legislature specified that "reasonable efforts shall include the efforts made in a timely manner to finalize a permanency plan for the child."

*In re L.T.*, 924 N.W.2d 521, 528 (Iowa 2019) (quoting Iowa Code § 232.102(10)(a)).

The older child had been removed from the father's care for more than a year before any pandemic-related closures could have occurred, and he made no progress during that time. Following the birth of the younger child, the father was in jail for two weeks and then avoided service provider contacts in March and April. The father has not established any examples when the COVID-19 pandemic prevented him from participating in services. At the termination hearing, although he testified services could still be provided to reunify him with the children, the father could not identify any additional services the State could have provided.

Under the circumstances, we conclude DHS did not fail to make reasonable efforts.

**AFFIRMED.**